UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re                             :

                                :

EVERTON ALOYSIUS STERLING,     :

                                :

                Debtor.      :

------------------------------------------------- :

                                :

EVERTON ALOYSIUS STERLING,     :

                                :

                Appellant,  :

                                :

           v.                 :

                                :

1279 ST. JOHNS PLACE, LLC,      :

                                :

                Appellee.   :

                                :

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>March 3, 2017</u>

16 Civ. 3296 (KPF)

Bankr. No. 14-12608 (SHL)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge:

      Over the course of his Chapter 7 bankruptcy proceeding, Appellant

Everton Aloysius Sterling has appealed several decisions of the presiding

United States Bankruptcy Judge, Sean H. Lane, to the United States District

Court for the Southern District of New York. *See, e.g.*, *In re Everton Aloysius*

*Sterling*, No. 16 Civ. 351 (KPF); *In re Everton Aloysius Sterling*, No. 16 Civ. 1446

(PKC); *In re Everton Aloysius Sterling*, No. 16 Civ. 6639 (AJN); *In re Everton*

*Aloysius Sterling*, No. 17 Civ. 248 (ALC).  In a prior Order, this Court dismissed

one of his appeals — from a December 22, 2015 order of the Bankruptcy Court

(the "December 22 Order") — for lack of subject matter jurisdiction because of

its untimeliness.  *See In re Everton Aloysius Sterling*, No. 16 Civ. 351 (KPF),

Dkt. #9 (S.D.N.Y. Mar. 30, 2016).  The instant appeal is a second challenge to

the proceedings that resulted in the December 22 Order, and it also fails.  To

the extent that this Court may consider Appellant's current claims on appeal, they fall in the face of the Bankruptcy Court's proper exercise of its considerable discretion.

## BACKGROUND[1]

**A.    Factual Background**

**1.    Overview**

The relevant timeline is detailed in the Bankruptcy Court's December 22 Order, from which this summary is excerpted.  (*See* Bankr. Dkt. #65 at 2-4). Appellant does not seriously dispute this sequence of events, though he vigorously disputes whether certain entities had rights in (and, by extension, had the legal ability to assign or transfer their rights in) the properties in question.

At issue here are three real properties, located at 551 Knickerbocker Avenue, Brooklyn, New York (the "Brooklyn Property"); 1320 East 222 Street, Bronx, New York (the "Bronx Property"), and Block and Lot 4730/7 on East 222 Street, also in the Bronx (the "Bronx Lot," and together with the Brooklyn Property and the Bronx Property, the "Three Properties").  On December 23, 2011, Appellant executed a note in favor of Columbia Capital Co. in the amount of $190,000.00 (the "Brooklyn Note").  The Note was secured by the

---

[1]    For ease of reference, the Court uses "Bankr. Dkt. #[ ]" to refer to docket entries in Appellant's Chapter 7 bankruptcy proceeding, which docket has been assigned bankruptcy number 14-12608; "Adv. Pro. Dkt. #[ ]" to refer to docket entries for a tangentially related adversary proceeding in Appellant's Chapter 7 proceeding, which docket was assigned adversary proceeding number 15-01288; "16 Civ. 351 Dkt. #[ ]" to refer to docket entries in Appellant's earlier appeal to this Court from the December 22 Order; and "Dkt. #[ ]" to refer to the docket in this appeal.

Brooklyn Property, pursuant to a mortgage executed by Appellant on December 23, 2011 (the "Brooklyn Mortgage").  On August 20, 2012, the Brooklyn Mortgage was assigned by Columbia Capital Co. to 222 Funding Associates. Subsequently, an "allonge" — a sheet of paper on which additional endorsements can be made — was attached to the Brooklyn Note and signed by Columbia Capital Co., paying the Note to the order of 222 Funding Associates.

On August 23, 2012, Appellant, in his role as President of Latou Realty Corp. ("Latou"), executed a note in favor of 222 Funding Associates in the amount of $275,000.00 (the "Second Note").  The Second Note was, in turn, secured by each of the Three Properties, pursuant to a mortgage that Appellant executed that same day (the "Second Mortgage").  An allonge was later attached to the Second Note and signed by 222 Funding Associates, paying this Note to the order of Appellee 1279 St. Johns Place LLC.

On August 23, 2012, the Brooklyn Note and the Second Note were consolidated into the principal sum of $465,000.00 (the "Consolidated Note"). On the same date, Appellant, as President of Latou, consolidated the Brooklyn Mortgage and the Second Mortgage in favor of 222 Funding Associates by executing a consolidation modification spreader agreement on all of the Properties (the "Consolidated Mortgage").  To facilitate the execution of the Consolidated Note and the Consolidated Mortgage, on August 23, 2012, Appellant deeded the Three Properties to Latou.

A few months later, however, in November 2012, Latou defaulted on the Consolidated Mortgage.  222 Funding Associates subsequently filed a

3

foreclosure action against the Bronx Property and the Bronx Lot in Bronx Supreme Court.  *See 222 Funding* v. *Latou Realty*, Index No. 380272/2013 (the "Foreclosure Action").[2]  On November 26, 2013 — on the eve of a pending motion for the entry of a judgment of foreclosure and sale — Latou deeded the Three Properties back to Appellant without the knowledge of 222 Funding Associates or Appellee.  Appellee, to which 222 Funding Associates had assigned the Consolidated Mortgage in June 2014 by means of an allonge on the Consolidated Note, claims that these transfers were undertaken to delay the Foreclosure Action.

### 2.     The Chapter 7 Petition

Appellant filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 14, 2014.  (Bankr. Dkt. #1).  The progress of the petition, according to the U.S. Trustee, was hindered by Appellant's conduct, including (i) his incomplete financial disclosures; (ii) his filing of an "Affidavit of Discharge," which included a "final counter offer" pursuant to which any effort to take Appellant's property would result in "damages of Five Million Dollars ($5,000,000.00) in lawful United [S]tates dollars"; (iii) his imposition on various court documents of the watermark "REFUSAL FOR CAUSE WITHOUT DISHONOR — DO NOT CONSENT — Return Without Prejudice," followed by his signature as "Authorized Representative All Rights Reserved UCC 1-308"; and (iv) his refusal to answer questions posed by the U.S. Trustee on the

---

[2]     After purchasing the Consolidated Mortgage, Appellee obtained a vacatur of the original foreclosure judgment, in order to add the Brooklyn Property to the Foreclosure Action. (*See* Bankr. Dkt. #40 at ¶ 28).

grounds that "pursuant 12 U.S.C. § 95a(2) [a statute specifying regulatory powers of the President in times of war] the matter has been discharged." (Bankr. Dkt. #29).[3]

On July 27, 2015, the U.S. Trustee filed a complaint to commence an adversary proceeding (the "Adversary Proceeding") objecting to Appellant's discharge pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(5), and 727(a)(6).  (Bankr. Dkt. #39).  In his supporting papers, the Trustee detailed Appellant's long-standing refusal to disclose fully his financial situation.

### 3.    The Lift-Stay Motion, the Motion for Injunctive Relief, and the Motion to Strike

On September 25, 2015, Appellee moved to lift the stay in order to commence a foreclosure action against the Three Properties (the "Lift-Stay Motion"); it sought as well *in rem* relief with respect to the Properties themselves.  Among other facts, Appellee related that: (i) Appellant had listed the Three Properties in his bankruptcy filings without listing any secured mortgages or claims against them; (ii) Appellant had failed to list Appellee (or its predecessor in interest, 222 Funding Associates) as a secured creditor; and

---

[3]    Relatedly, in proceedings in the Bankruptcy Court, the individual Everton Aloysius Sterling, whom the Court here refers to as "Appellant," has sought to distinguish himself from the Chapter 7 petitioner, "EVERTON ALOYSIUS STERLING," which Appellant claims is merely "a U.S. vessel."  (Bankr. Dkt. #60 at 12 (transcript of October 27, 2015 conference); *see also* Bankr. Dkt. #34 ("Affidavit of Fact and Surrender of the [Alleged] Debtor Defendant/Legal Person/Legal Entity 'Everton Aloysius Sterling,'" filed March 12, 2015)).  In these efforts, Appellant is taking a page from the book of the Sovereign Citizen movement, which the Second Circuit has described as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior."  *United States* v. *Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013) (summary order).  This Court adds its voice to the judicial chorus rejecting, as legally unsupportable, Sovereign-Citizen-based challenges to federal law.

(iii) Appellee believed that the timing of various assignments and the petition itself were designed to delay the foreclosure sale of the Bronx Property and the Bronx Lot.  (Bankr. Dkt. #40).  Among other exhibits to the motion, Appellee included copies of the underlying mortgages, notes, and allonges thereto.  (*Id.*).

Appellant responded on October 15, 2015, by seeking an order to show cause why a temporary restraining order and/or a preliminary injunction should not be imposed to stay foreclosure proceedings (the "Motion for Injunctive Relief").  (Bankr. Dkt. #42).  In his supporting affidavit, Appellant contended that (i) Appellee was barred under the doctrine of laches from raising a claim to the Three Properties because it had filed the Lift-Stay Motion more than one year after the petition was filed; (ii) Appellant had obtained a discharge with respect to the Three Properties by "pledging the Reversionary Interest and everything in the name of the infant EVERTON ALOYSIUS STERLING for the beneficial interest of the UNITED STATES who agreed to perform and indemnify Everton Aloysius and hold him harmless in accord with [12 U.S.C. § 95a(2)]"; and (iii) Appellee lacked standing to raise a claim to the Properties.  (*Id.*).  Appellant's motion papers also included a "Notice of Demand for Offer of Proof," in which he outlined various supporting documents and affidavits he sought from Appellee.  (*Id.*).[4]

---

[4]      Appellant also included various documents from the Foreclosure Action, UCC financing statements, a copy of his birth certificate, and a sheet of paper on which he had written, "Pay to the order of United States lawful money and full discharge is demanded for all transactions, 12 USC 411, 95a(2), 50 USC APP 7(e)," and to which he had affixed his signature.

By Order dated October 19, 2015, the Bankruptcy Court denied Appellant's request for a temporary restraining order and scheduled a hearing for both the Lift-Stay Motion and the Motion for Injunctive Relief to take place on October 27, 2015.  (Bankr. Dkt. #43).  That same day, Appellant filed a Motion to Strike Appellee's Lift-Stay Motion (the "Motion to Strike"), on the grounds that counsel for Appellee had failed to file an application to appear *pro hac vice* in the Bankruptcy Court.  (Bankr. Dkt. #45).  Appellee filed a joint opposition memorandum to the Motion for Injunctive Relief and the Motion to Strike on October 23, 2015.  (Bankr. Dkt. #47).

A hearing on the Lift-Stay, Injunctive Relief, and Strike Motions was held before Judge Lane on October 27, 2015.  (Bankr. Dkt. #60).[5]  Among other issues, Judge Lane inquired into (i) the propriety of *in rem* relief where the challenged transfers had occurred approximately one year prior to the filing of the Chapter 7 petition; and (ii) the degree to which Appellee derived standing from any of the allonges at issue.  (*Id.* at 4-8).  During the conference, Appellant reiterated his argument that Appellee's claim had been filed too late, and further claimed that Appellee lacked standing because it could not "substantiate or validate [the] debt."  (*Id.* at 9).  Judge Lane engaged Appellant on the issue of the proper documentation for Appellee's claims, and specifically considered Appellant's arguments that the documentation was fraudulent.  (*Id.* at 10-11).

---

[5]     The Bankruptcy Court later indicated that the Motion for Injunctive Relief was not on for a hearing that day.  (Bankr. Dkt. #60 at 17).

The Bankruptcy Court then discussed with Appellant the bases on which the stay could be lifted.  (Bankr. Dkt. #60 at 12-16).  After numerous attempts to question him on this point, Appellant conceded that, to the best of his knowledge, no payments had been made on the underlying mortgages in the preceding three years.  (*Id.* at 12-14).  The Court then heard further argument from Appellant on his laches defense, his claim that counsel for the Appellee was improperly acting as a witness at the hearing by presenting evidence to the Court and answering the Court's questions, and his belief that "all matters in the name of 'EVERTON ALOYSIUS STERLING' have been assigned to and on behalf of the United States of America.  And pursuant to 12 U.S.C. [§ 95a(2)], issued a full discharge and acquittal."  (*Id.* at 14-16).

The Bankruptcy Court rendered a preliminary oral opinion on the Lift-Stay Motion, but then determined to adjourn the matter, in order to permit Appellee to "produce the physical consolidated note with the allonge, so that the Court can just determine that the allonge is properly attached to the consolidated note."  (Bankr. Dkt. #60 at 26; *see generally id.* at 21-33).  Assuming that to be the case, the Court opined that the facts warranted a lifting of the stay.  (*Id.* at 26-29).  Considering next the application for *in rem* relief, the Court found tentatively that Appellee had not met its burden of justifying such relief.  (*Id.* at 30-32).

At the conclusion of the proceeding, the Bankruptcy Court discussed a schedule for further briefing; pursuant to those discussions, Appellant filed a Motion for Declaratory Relief with Request for Preliminary Injunction and for

an Opportunity to Conduct Discovery on November 18, 2015 (the "Declaratory Relief Motion"). (Bankr. Dkt. #59). This motion was equal parts a reply brief to the Lift-Stay Motion and a request for additional discovery to substantiate Appellee's claims. Again, Appellant advanced claims of laches and lack of standing. (*Id.* at 3-6). To these he added new claims under (i) the Organic Act of 1871, which, according to Appellant, transformed the United States into a Municipal Corporation with no sovereign immunity (*id.* at 8)[6]; (ii) the *Clearfield Trust* doctrine, which Appellant claimed deprived the United States of sovereign immunity where corporate commercial paper and securities were concerned (*id.*)[7]; and (iii) the Fair Debt Collection Practices Act (the "FDCPA"), which Appellant claimed was implicated by the assignments of the notes (*id.* at 13).

The hearing resumed on November 24, 2015. (Bankr. Dkt. #64). The Bankruptcy Court began by examining the originals of several of the notes,

---

[6] For a discussion of this tenet of the Sovereign Citizen movement, see *United States* v. *Harding*, No. 13 Cr. 008 (MFU), 2013 WL 1832564, at *1-2 (W.D. Va. May 1, 2013).

[7] *See Hillman* v. *United States*, No. 10 Civ. 201 (SKB), 2011 WL 797315, at *5 (S.D. Ohio Jan. 11, 2011), *report and recommendation adopted*, No. 10 Civ. 201 (SSB), 2011 WL 795732 (S.D. Ohio Mar. 1, 2011):

> [T]he Clearfield Trust Doctrine does not constitute a waiver of sovereign immunity. In *Clearfield Trust* v. *United States*, 318 U.S. 363, 366-67, 63 S. Ct. 573, 574-75, 87 L.Ed. 838 (1943), the Supreme Court held that federal law governs questions concerning the rights of the federal government under federal programs, such that, in the absence of an act of Congress applicable to the functioning of such programs, the federal courts may fashion an appropriate and governing rule of law according to their own standards. The primary doctrine derived from *Clearfield* is that federal common law will displace state law, and can be created by federal courts, only when "uniquely federal interests" are involved and the application of state law would "significantly conflict" with federal policy or objectives. *Boyle* v. *United Techs*, 487 U.S. 500, 507-08, 108 S. Ct. 2510, 2516, 101 L.Ed.2d 442 (1988). Like nearly every other authority cited by Plaintiff, *Clearfield Trust* has no application to any issue in this case.

including the Consolidated Note and the allonge attached thereto.  (*Id.* at 4-8).

Appellant was given an opportunity to inspect the documents as well, and

reiterated his objection to the documents being presented by counsel for

Appellee.  (*Id.* at 9).  Appellant again claimed that Appellee had validated

neither a debt nor its claim in the Bankruptcy Court, and briefly restated his

arguments for laches, lack of standing, the FDCPA, and due process violations.

(*Id.* at 10-15).

> At the end of the hearing, the Court sought to clarify for Appellant an

apparent misconception concerning the Lift-Stay Motion:

> [T]he one thing I will tell you is that you have to understand what a lift-stay motion is.  It's a motion to say that the automatic stay that arises out of the bankruptcy shouldn't apply to a particular set of proceedings.  And here, a foreclosure dealing with these three notes and the properties in question.
>
> And what that means then is that that party has asked for those proceedings to go forward.  *And if those proceedings do go forward, parties in those proceedings retain whatever rights they have to make whatever arguments they want to make in those proceedings.*  Whether it's a foreclosure, whether it's an eviction, whatever it is.  And so these sort of lift-stay motions are very common in bankruptcy.
>
> So, I understand that you're raising a lot of arguments, and I will consider them all to the extent that they address the lift-stay motion.  And some of them may also address the underlying merits.  So, first I'll decide whether the lift-stay motion should happen, and should be granted.  If I deny it, then I deny it.  *If I grant it, then you'll proceed in that other court with whatever arguments and merit arguments on the merits that you're entitled to make.  And nothing that's happened here in connection with this motion changes that fact.*

(Bankr. Dkt. #64 at 20-21 (emphases added)).

### 4.      The December 22 Order

In a Memorandum Opinion and Order issued on December 22, 2015, the Bankruptcy Court decided the Lift-Stay Motion and the Preliminary Injunction Motion, and resolved the Motion to Strike by deeming it an objection to the Lift-Stay Motion.  (Bankr. Dkt. #65 at 2 & n.1).[8]  The Court began by reviewing the real estate transactions that led to Appellee's assertion of a claim against the Three Properties.  (*Id.* at 2-4).  It then considered the antecedent issue of whether Appellee had standing to make a motion to lift the stay.  (*Id.* at 4-7).  After reviewing New York law on the issue, the Bankruptcy Court concluded that Appellee had standing because it was the assignee and possessor of the Consolidated Note and the Consolidated Mortgage, which had been endorsed to it by means of an allonge.  (Indeed, Appellee also had the originals of the Brooklyn Note and the Second Note, as well as the allonges attached to each.)  In this regard, the Court specifically addressed, and rejected, Appellant's several prior requests for discovery:  "[Appellant] requests numerous items in discovery.  But [Appellant] has not identified any legitimate issue of fact that would warrant discovery, and the Court will not permit him to seek discovery in these circumstances based on mere speculation."  (*Id.* at 7 (collecting cases)).

The Bankruptcy Court then considered the merits of the Lift-Stay Motion.  (Bankr. Dkt. #65 at 8-11).  After reviewing the documentary and testimonial evidence supporting Appellee's claim that no one was making post-

---

[8]      The decision is also reported at *In re Everton Aloysius Sterling*, 543 B.R. 385 (Bankr. S.D.N.Y. 2015).

petition payments on the Three Properties (and thus that its interests in same were not adequately protected), the Court noted that "[Appellant] does not appear to contest that no payments have been made on the Properties, that taxes are not being paid, or that [Appellee] is, in fact, not adequately protected." (*Id.* at 9). The Court then reviewed the factors set forth in *Sonnax Indus., Inc.* v. *Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990), and concluded that the majority of those factors applicable to the case supported lifting the stay. (*Id.* at 9-11).

However, while willing to lift the stay, the Bankruptcy Court was unwilling to grant Appellee's application for *in rem* relief pursuant to 11 U.S.C. § 362(d)(4). (Bankr. Dkt. #65 at 11-14). Even as it acknowledged that certain acts by Appellant — including the transfer of the deeds on the Three Properties from Latou to Appellant during the pendency of the Foreclosure Action — may have been part of a scheme to hinder, delay, or defraud, the Court found an "[in]sufficient evidentiary record to conclude at this time that the bankruptcy filing was intended to be part of such a scheme." (*Id.* at 13).

Finally, the Bankruptcy Court addressed Appellant's Motion for Injunctive Relief. (Bankr. Dkt. #65 at 14-20). The Court noted Appellant's failure to address how he would be harmed by the lifting of the automatic stay, particularly since lifting the stay would only allow the Foreclosure Action to proceed, and would not immediately (if ever) result in foreclosure. It also found no likelihood of success on the merits. Considering first Appellant's laches argument, the Bankruptcy Court rejected it, finding no time limitation on

12

Appellee's ability to vindicate any rights it might have by filing the Lift-Stay

Motion — and, indeed, no missed deadlines by Appellee in the Chapter 7

proceeding.  More broadly, the Court found laches, an equitable doctrine, to be

inapplicable to a situation where Appellant had demonstrated neither

inexcusable delay nor any prejudice to him resulting from the delay:

> To begin with, nothing in the Bankruptcy Code requires
> that a lift stay motion be filed for a secured creditor to
> maintain its rights.  And for the same reasons discussed
> above, [Appellant] has not been prejudiced by any time
> that has passed since the filing of the bankruptcy case.
> His rights with respect to the Properties have not been
> impaired by the passage of time since the filing.  In fact,
> the opposite is true.  During this time, [Appellant] has
> benefitted from the automatic stay, which is the only
> thing that has prevented the Foreclosure Action from
> proceeding.  With the Lift Stay Motion granted,
> [Appellant] will simply have to return to the State Court
> and defend himself in the Foreclosure Action.  Even if
> so much time had passed that [Appellant] had received
> a bankruptcy discharge, Section 524(a) of the
> Bankruptcy Code "bars only 'acts or actions to collect a
> discharged debt "as a personal liability.  This provision
> does not prevent foreclosure of a lien on property.'"

(*Id.* at 18-19 (citations omitted)).  The Court also rejected Appellant's

arguments for discharge under 12 U.S.C. § 95a(2), inasmuch as any

conveyances purportedly made by Appellant were plainly not related to the

President's powers to regulate transactions during wartime.  (*Id.* at 20).  And

the Court rejected, in a footnote, certain arguments raised for the first time in

Appellant's reply brief.  (*Id.* at 20-21 n.9).

In sum, in the December 22 Order, the Bankruptcy Court granted

Appellee's application to lift the automatic stay; denied its request for *in rem*

relief; and denied Appellant's request for injunctive relief.

13

### 5.    Appellant's First Appeal

On December 31, 2015, Appellant mailed a copy of the December 22 Order back to the Bankruptcy Court.  (Bankr. Dkt. #68).  On each page, Appellant had superimposed a red watermark with the legend: "REFUSAL FOR CAUSE WITHOUT DISHONOR — DO NOT CONSENT — Return Without Prejudice," followed by his signature as "Authorized Representative All Rights Reserved UCC 1-308."  (*Id.*).

On January 13, 2016, Appellant filed a notice of appeal with respect to the December 22 Order.  (Bankr. Dkt. #69).  The appeal was assigned to the undersigned.  After an initial conference held on February 24, 2016, at which Appellant failed to appear, this Court issued an order to show cause why the case should not be dismissed (i) for failure to prosecute under Federal Rule of Civil Procedure 41(b), or (ii) as untimely pursuant to Federal Rule of Bankruptcy Procedure 8002(a).  (16 Civ. 351 Dkt. #4).  After receiving a written submission from Appellant that explained satisfactorily his absence from the conference (16 Civ. 351 Dkt. #8), but not the untimeliness of his notice of appeal (*id.*), this Court dismissed the matter for lack of jurisdiction (16 Civ. 351 Dkt. #9; *see also id.* at 3 (explaining that the time limit contained in Fed. R. Bankr. P. 8002 is jurisdictional)).  That decision is now on appeal to the United States Court of Appeals for the Second Circuit.  *See In re Everton Aloysius Sterling*, No. 16-1120.

### 6.    Appellant's Motion for Additional Findings

After the notice of appeal had been filed, in February 2016, the

Bankruptcy Court received a document that Appellant had dated January 7,

2016 (the "Motion for Additional Findings").  (Bankr. Dkt. #73 (entered

February 2, 2016)).  The document recited that it was a "Motion to Make

Additional Findings of Fact Pursuant to Federal Rules of Bankruptcy Procedure

§§ 7052, 9014 and 7062."[9]  It contained the caption of the adversary

proceeding that had been commenced in July 2015 by the U.S. Trustee, and as

to which Appellant had filed a "Third-Party Complaint/Counterclaim" that

named as third-party defendants, among others, the Secretary of the Treasury,

representatives of the Office of the U.S. Trustee, the Attorney General, and the

Comptroller of the Currency.  (*See* Adv. Pro. 15-01288 Dkt. #1 (complaint),

#3 (third-party complaint), #11 (amended third-party complaint)).

Significantly, Appellee was not a party to that adversary proceeding.  But

though it outlined a portion of the procedural history of the adversary

---

[9]    Federal Rule of Bankruptcy Procedure 7052 adopts, in substantial part, Federal Rule of Civil Procedure 52, which pertains to a court's findings and conclusions.  As relevant here, Rule 7052 permits a party to move within 14 days of the entry of an order or judgment for the court to amend or make additional findings, and to amend the relevant order or judgment accordingly.  Notably, Appellant's motion was dated 16 days after the December 22 Order, and was docketed by the Bankruptcy Court 42 days after that order.

Federal Rule of Bankruptcy Procedure 9014 pertains to the resolution of contested matters, and includes provisions regarding service, the application of certain of the Part VII rules (i.e., the rules that govern adversary proceedings) to contested matters, the taking of testimony from witnesses, and the attendance of witnesses.

Federal Rule of Bankruptcy Procedure 7062 applies Federal Rule of Civil Procedure 62, which concerns stays of proceedings in order to enforce a judgment, to adversary proceedings brought under the Bankruptcy Code.

proceeding, the motion also recited that it sought the additional findings of fact in connection with the December 22 Order.  (*See, e.g.*, Bankr. Dkt. #73 at 2).

As best as this Court can discern, Appellant contends in the Motion for Additional Findings that the Bankruptcy Court should have had an evidentiary hearing with respect to Appellee's Lift-Stay Motion because (i) Appellee's claims were unsubstantiated and (ii) Appellant had filed various factual affidavits in the Bankruptcy Court that controverted facts in issue.  (Bankr. Dkt. #73 at 2-4 (citing Fed. R. Bankr. P. 9014)).  Appellant also listed docket entries that he believed to be relevant to the issue, several of which post-dated the December 22 Order and several of which pertained only to the adversary proceeding to which Appellee was not a party.  (*Id.* at 4-8).

### 7.    The April 12 Order on Appeal

By Order dated April 12, 2016 (the "April 12 Order"), the Bankruptcy Court denied Appellant's Motion for Additional Findings.  (Bankr. Dkt. #88). The Court began by explaining its understanding that the motion sought both an evidentiary hearing and to amend or set aside the December 22 Order. Focusing on the former, the Bankruptcy Court found that Appellant had previously requested an evidentiary hearing in connection with the Lift-Stay Motion, and that the Court had denied this request, as it had the discretion to do.  (*Id.* at 1-2).  The Court found no "factual or legal basis to revisit the Court's conclusion that an evidentiary hearing was not necessary."  (*Id.* at 2). Similarly, the Bankruptcy Court found no reason to revisit its prior holding that Appellee had standing to seek to lift the stay.  (*Id.*).  Finally, in a footnote,

16

the Court rejected efforts to obtain relief under Federal Rules of Civil Procedure 59 or 60, to the extent such arguments could be located in Appellant's motion papers, after concluding that Appellant was merely seeking to relitigate issues that had already been decided.  (*Id.* (citing, *inter alia*, *Associated Press* v. *U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) ("[A] motion for reconsideration [under Rule 59] is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.")).

## B.    Procedural History

Appellant filed his notice of appeal from the April 12 Order on April 26, 2016.  (Dkt. #1).  The matter was initially assigned to the Honorable George B. Daniels, United States District Judge, and reassigned to the undersigned in October 2016.  (Dkt. Entry dated October 20, 2016).  This Court observed certain inconsistencies in Appellant's filings on the Court's ECF system, and these issues were resolved by December 2016.  (*See* Dkt. #9-12).

By letter dated February 1, 2017, Appellee moved to dismiss for lack of jurisdiction, claiming that the instant appeal contravened the Court's prior dismissal of Appellant's first appeal.  (Dkt. #14; *see also* Dkt. #7 (letter dated August 10, 2016, from counsel for Appellee, seeking leave to file motion to dismiss in lieu of appellate brief, and observing that Appellant's brief was not properly filed on ECF)).[10]  Appellant filed his reply on February 15, 2017,

---

[10]    The docket for this appeal discloses a problem with Appellee's February 1, 2017 filing. However, both the Court and Appellant have received copies of the filing.  Counsel for

advancing several complaints about the conduct of Appellee's counsel, including purported violations of Local Civil Rule 1.3.  (Dkt. #15; *see also* Dkt. #13 (memorandum endorsement dated January 9, 2017, rejecting Appellant's earlier assertion of arguments under Rule 1.3)).

## DISCUSSION

### A.   The Standard of Review

A district court reviewing an appealable order from a bankruptcy court is instructed to review the bankruptcy court's findings of facts for clear error, its conclusions of law *de novo*, and its evidentiary rulings for an abuse of discretion.  *In re Residential Capital, LLC*, 552 B.R. 50, 62 (S.D.N.Y. 2015) (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000); *Manley* v. *AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003)), *appeal dismissed* (Mar. 9, 2016).  *See generally* Fed. R. Bankr. P. 8013.  "[A] finding is 'clearly erroneous' when" the reviewing court is "left with the definite and firm conviction that a mistake has been made."  *ASM Capital, LP* v. *Ames Dep't Stores, Inc. (In re Ames Dep't Stores)*, 582 F.3d 422, 426 (2d Cir. 2009) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

A district court "may affirm [the bankruptcy court's decision] on any ground that finds support in the record, and need not limit its review to the bases relied upon in the decision[] below."  *Freeman* v. *Journal Register Co.*, 452 B.R. 367, 369 (Bankr. S.D.N.Y. 2010).  That said, the district court may

---

Appellee has been contacted by Chambers about this ECF filing deficiency on several occasions, and is ordered to remedy the deficiency at once.

not consider evidence outside the record below.  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (Bankr. S.D.N.Y. 2008).  Further, any argument not raised in the bankruptcy court is considered waived and will not be considered by the district court, unless such a waiver would result in manifest injustice.  *See Klein* v. *Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir. 1994); *see also Best Payphones, Inc.* v. *Manhattan Telecomms. Corp. (In re Best Payphones, Inc.)*, 432 B.R. 46, 60 (Bankr. S.D.N.Y. 2010), *aff'd*, 450 F. App'x 8 (2d Cir. 2011) (summary order).

## B.     Defining the Instant Appeal

Analysis of this appeal — Appellant's second appeal relating to the December 22 Order — is informed by the first.  To begin, Appellee argues with some force that this appeal is wholly precluded in light of this Court's prior order dismissing the first appeal for lack of jurisdiction.  (Dkt. #7, 14).  After all, this Court's prior ruling is dispositive of the propriety of the December 22 Order; it would be an end-run around that decision to contest the process by which Judge Lane arrived at that order, and certainly an end-run to challenge Judge Lane's failure to amend or set aside that order.  In this regard, it is worth noting that Appellant's arguments have transformed dramatically since they were first presented to the Bankruptcy Court on January 7, 2016. (*Compare* Bankr. Dkt. #73 (memorandum in support of Motion for Additional Findings), *with* Dkt. #5 (memorandum in support of appeal)).  While the bulk of Appellant's Motion for Additional Findings focused on the need for and scope of

19

an evidentiary hearing, the bulk of the instant appeal from the denial of that motion is a reargument of various doctrinal issues, including issues that were raised impermissibly for the first time in Appellant's reply brief to the Bankruptcy Court.  (*See* Dkt. #5 (addressing ostensible evidentiary deficiencies at page 9 of a 12-page submission)).

The Court continues to extend solicitude to Appellant because of his *pro se* status.  *See Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (directing courts to read *pro se* filings "liberally and interpret them to raise the strongest arguments that they suggest").  As such, it considered in the first instance whether the Motion for Additional Findings should have been deemed by this Court or the Bankruptcy Court to be a motion for reconsideration of the December 22 Order that would have tolled the deadline for appeal.  Ultimately, this Court concludes that it should not have been.  The Motion for Additional Findings was received by the Bankruptcy Court several weeks after the notice of appeal of the December 22 Order had been filed; it was captioned for, and made extensive reference to, the adversary proceeding in which Appellee was not involved; and at no point did Appellant advise the Bankruptcy Court or this Court that the motion ought to be considered in connection with the first appeal.  Perhaps more significantly, even accepting as true the January 7, 2016 date that is affixed to the motion, Appellant's motion was untimely as a reconsideration motion.  *See* Fed. R. Bankr. P. 8002(a) (specifying a 14-day deadline for filing notices of appeals, absent certain exceptions), 8002(b)(1)(A) (permitting tolling of the deadline for filing a notice of appeal for a "timely

file[d]" motion to amend or make additional findings under Fed. R. Bankr.
P. 7052), 7052 (specifying a 14-day deadline for filing motions under this
provision), 9024 (permitting reconsideration of orders and judgments in certain
circumstances), 9023 (requiring motions pursuant to Rule 9024 to be filed
within 14 days of entry of judgment); *cf. Coe* v. *RJM, LLC*, 372 F. App'x 188,
189 n.* (2d Cir. 2010) (summary order) ("Rule 8002 was amended effective
December 1, 2009, to provide that a motion for reconsideration filed pursuant
to Bankruptcy Rule 9024 within 14 days after the entry of judgment ... tolls the
time to appeal.").

   This Court agrees with Appellee that, to the extent that Appellant is now
challenging the Bankruptcy Court's refusal, in the April 12 Order, to set aside
or amend the December 22 Order, those arguments are precluded by its prior
decision.  "Under the doctrine of res judicata, or claim preclusion, a final
judgment on the merits of an action precludes the parties or their privies from
relitigating issues that were or could have been raised in that action."
*TechnoMarine SA* v. *Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (emphasis
omitted) (quoting *St. Pierre* v. *Dyer,* 208 F.3d 394, 399 (2d Cir. 2000)).  *See
generally Marcel Fashions Grp., Inc.* v. *Lucky Brand Dungarees, Inc.*, 779 F.3d
102, 107 (2d Cir. 2015) (discussing claim and issue preclusion).

   Given that conclusion, the Court finds it difficult to address the propriety
of the evidentiary rulings by the Bankruptcy Court, including its decision to
have an evidentiary hearing that was smaller in scope than that sought by
Appellant.  That is because, were the Court to agree with Appellant on his

claims of procedural infirmities, the remedy would be vacatur of the December 22 Order — a remedy foreclosed by this Court's prior decision. That said, it is significant to this Court that *both* Appellant and the Bankruptcy Court addressed the Motion for Additional Findings as a standalone motion, with the Bankruptcy Court focusing on Appellant's evidentiary challenges. For purposes of this appeal, this Court will consider the April 12 Order as the denial of a standalone evidentiary challenge, and not a second attempt at challenging the propriety of the December 22 Order.

## C.   Permissible Bankruptcy Appeals

### 1.   Appeals from Final and Interlocutory Orders

With this construction in mind, the Court must determine whether any of the potential bases for appeal of a bankruptcy court order applies. It considers first whether the April 12 Order is a "final judgment[], order[], and decree[]" from which Appellant can appeal under 28 U.S.C. § 158(a)(1). The Supreme Court has observed in the bankruptcy context as follows:

> The rules [as to what constitutes an appealable final order] are different in bankruptcy. A bankruptcy case involves "an aggregation of individual controversies," many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor. 1 Collier on Bankruptcy ¶ 5.08[1][b], p. 5-42 (16th ed. 2014). Accordingly, "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Howard Delivery Service, Inc.* v. *Zurich American Ins. Co.*, 547 U.S. 651, 657, n. 3, 126 S. Ct. 2105, 165 L.Ed.2d 110 (2006) (internal quotation marks and emphasis omitted). The current bankruptcy appeals statute reflects this approach: It authorizes appeals as of right not only from final judgments in cases but from

"final judgments, orders, and decrees ... in cases and proceedings." § 158(a).

*Bullard* v. *Blue Hills Bank*, — U.S. —, —, 135 S. Ct. 1686, 1692-93 (2015) (concluding that orders denying confirmation of a plan with leave to amend are not "final" for purposes of appeal; defining relevant "proceedings" to include "the entire process culminating in confirmation or dismissal").[11]

### 2.   Interlocutory Appeals

While offering a comparatively stringent standard for final orders, however, the Supreme Court in *Bullard* noted that interlocutory appeals were available under 28 U.S.C. § 158(a)(3), and expressed its "expectation that lower courts will certify and accept interlocutory appeals from plan denials in appropriate cases." 135 S. Ct. at 1696; *see also* Fed. R. Bankr. P. 8004(d) ("If an appellant timely files a notice of appeal under this rule but does not include a motion for leave, the district court ... may ... treat the notice of appeal as a

---

[11]    *See also In re Segal*, 557 B.R. 46, 49-50 (E.D.N.Y. 2016):

> The concept of finality is more relaxed in the bankruptcy context than in normal civil litigation. *See In re Penn Traffic Co.,* 466 F.3d 75, 77-78 (2d Cir. 2006); *In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 92 (2d Cir. 2001) (recognizing the "flexible standard of finality" applicable in bankruptcy setting (internal quotation marks and citation omitted)). Finality requirements are relaxed because "bankruptcy proceedings often continue for long periods of time, and discrete claims within those proceedings are frequently resolved prior to the conclusion of the entire bankruptcy...." *In re Ionosphere Clubs, Inc.,* 139 B.R. 772, 777 (S.D.N.Y. 1992). Still, "even that flexibility is limited by the requirement that there be a final decision on the discrete issue at bar." *LTV Corp.* v. *Farragher (In re Chateaugay Corp.)*, 838 F.2d 59, 61-62 (2d Cir. 1988) (internal quotation marks and citation omitted); *see also In re Pegasus Agency, Inc.*, 101 F.3d 882, 885 (2d Cir. 1996) (recognizing that a bankruptcy order is interlocutory unless it "completely resolves all of the issues pertaining to a discrete claim, including issues as to the proper relief" (internal quotation marks, citation, and alterations omitted)).

motion for leave and either grant or deny it."). Even then, however, courts must consider whether the matter involves (i) a controlling question of law (ii) as to which there is a substantial ground for difference of opinion, (iii) where immediate appeal may materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b). *See generally Kassover* v. *Kassover (In re Kassover)*, 343 F.3d 91, 94 (2d Cir. 2003). "[A]ll three requirements set forth in section 1292(b) must be met for a Court to grant leave to appeal." *Thaler* v. *Estate of Arbore (In re Poseidon Pool & Spa Recreational, Inc.)*, 443 B.R. 271, 275 (E.D.N.Y. 2010). "In addition, a party seeking leave to appeal a non-final order must demonstrate exceptional circumstances to overcome the general aversion to piecemeal litigation and to justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Coudert Bros. LLP Law Firm Adversary Proceedings,* 447 B.R. 706, 711 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

### 3. The Collateral Order Doctrine

A final basis of appellate jurisdiction stems from the collateral order doctrine, "a judicially created exception to the final decision principle; it allows immediate appeal from orders that are collateral to the merits of the litigation and cannot be adequately reviewed after final judgment." *Germain* v. *Conn. Nat'l Bank*, 930 F.2d 1038, 1039-40 (2d Cir. 1991); *see also In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 657-58 (S.D.N.Y. 2005) (explaining that a bankruptcy decision may be appealed under this doctrine only if all three of the following requirements are met: "the decision would [i] conclusively determine

the disputed question, [ii] resolve an important issue completely separate from the merits of the action[ ], and [iii] be effectively unreviewable on appeal from a final judgment" (citations omitted)).  The Supreme Court has characterized the collateral order doctrine as a "narrow exception ... whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal."  *Richardson-Merrell, Inc.* v. *Koller*, 472 U.S. 424, 430-31 (1985) (internal quotation marks and citations omitted).  In consequence, "the conditions for collateral order appeal [are] stringent," *Dig. Equip. Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994), lest the exception swallow the rule against piecemeal appeals.

### 4.   Discussion

Appellant's appeal of the April 12 Order does not fit neatly into any of these three categories.  To the extent that it is construed as an appeal from the Bankruptcy Court's evidentiary ruling, it does not appear to qualify as an appeal of a "final decision on the discrete issue at bar," and thus would not constitute a final order under § 158(a)(1).  *See LTV Corp.* v. *Farragher (In re Chateaugay Corp.)*, 838 F.2d 59, 61-62 (2d Cir. 1988) (internal quotation marks and citation omitted).

Nor is the April 12 Order a proper subject for an interlocutory appeal.  The Bankruptcy Court's decision not to have a more extensive evidentiary proceeding was plainly a matter committed to its discretion, and thus did not implicate a controlling question of law "to which there is a substantial ground for difference of opinion[.]"  28 U.S.C. § 1292(b).  Nor can this Court discern

how an immediate appeal of the order will "materially advance the termination of the litigation," *id.*, given the resolution of the first appeal.

Finally, the Court does not believe this is the rare case where resort to the collateral order doctrine is warranted.  As discussed throughout this Opinion, Appellant's dissatisfaction with the resolution of the Lift-Stay Motion has been resolved by the first appeal, which is now before the Second Circuit. The corollary issue of the scope of the evidentiary hearing is hardly an "important issue completely separate from the merits of the action." *Richardson-Merrell, Inc.*, 472 U.S. at 31 (internal citation omitted).

For all of these reasons, the Court does not believe that the April 12 Order, properly construed, is appealable.  However, again according deference to Appellant's *pro se* status and to the manner in which the Bankruptcy Court and Appellant construed the Motion for Additional Findings, the Court will consider whether Judge Lane erred in declining Appellant's request for an additional hearing.

**D.   The Bankruptcy Court Did Not Err in Denying Appellant's Motion for Additional Findings**

### 1.   Applicable Law

A bankruptcy court has the discretion to decide an issue without holding an evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse of discretion.  *See Key Mech. Inc.* v. *BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 119 n.5 (2d Cir. 2003), *abrogated on other grounds*, *In re Zarnel*, 619 F.3d 156 (2d Cir. 2010); *see also D.A. Elia Constr. Corp.* v. *Damon & Morey, LLP (In re D.A. Elia Constr. Corp.)*, No. 04 Civ 975A

26

(RJA), 2006 WL 1720361, at *7 (W.D.N.Y. June 19, 2006) ("The bankruptcy court's decision to deny a full evidentiary hearing was not an abuse of discretion.  The nature of the hearing lies within the sound discretion of the bankruptcy judge, and does not necessarily require the presentation of oral testimony." (citation omitted)), *aff'd sub nom. Bernheim* v. *Damon & Morey, LLP*, Lead Dkt. No. 06-3386-bk, 2007 WL 1858292 (2d Cir. June 28, 2007).

A bankruptcy court judge does not abuse his discretion in reaching a decision without holding an evidentiary hearing where "the record provided ample evidence on which the court could make such a decision."  *C-TC 9th Ave. P'ship* v. *Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1313 (2d Cir. 1997).  What is more, "[a] ruling is an abuse of discretion only if the bankruptcy court 'bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.'"  *Stasko* v. *Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 4322 (JGK), 2011 WL 2462773, at *2 (S.D.N.Y. June 20, 2011) (quoting *Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)); *see also Peskin* v. *Picard*, 440 B.R. 579, 584 (S.D.N.Y. 2010).

### 2.    Discussion

Judge Lane did not abuse his broad discretion in denying Appellant's Motion for Additional Findings.  To be clear, while couched as a "motion to make additional findings of fact" (Bankr. Dkt. #73 at 1, 2), the motion was in substance a retread of two prior requests for discovery that the Bankruptcy Court had considered and rejected in connection with the October 27 and

November 24 hearings.  (*See* Bankr. Dkt. #42, 59; *see also* Bankr. Dkt. #65 at 7 (noting that Appellant "requests numerous items in discovery")).  Furthermore, Appellant's requests for discovery, which continue through this appeal, bespeak a misapprehension of the law.  Judge Lane had two questions to answer in connection with the Lift-Stay Motion:  First, he needed proof that Appellee had standing to move to lift the stay and seek *in rem* relief.  He obtained this proof by reviewing the real estate transaction documents submitted in connection with the parties' motions (*see* Bankr. Dkt. #40, 42, 45); questioning counsel for Appellee on standing during the October 27 hearing (*see* Bankr. Dkt. #60 at 4-5); explaining to Appellant the laws under which Appellee claimed standing (*see id.* at 8-12, 18-21, 24-26; *see also* Bankr. Dkt. #65 at 4-8); and then deferring decision on the motion until he and Appellant could examine the originals of the relevant documents, including the original alloges (*see* Bankr. Dkt. #64 at 4-9).

Second, Judge Lane needed proof of a basis to lift the stay.  In this case, the proffered basis was Appellant's failure to make post-petition payments on the Three Properties.  *See* 11 U.S.C. § 362(d)(1) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]").  Judge Lane obtained this proof by reviewing the documentation of arrearages that had been submitted by Appellee with the Lift-Stay Motion (*see* Bankr. Dkt. #40 at ¶¶ 8, 31), and then confirming with Appellant at the October 27 hearing that, indeed, no such

28

payments had been made (*see* Bankr. Dkt. #60 at 14).  With this information, the Bankruptcy Court could make an informed evaluation of the *Sonnax* factors; it did, and did not err in concluding that they favored lifting the stay.

Much of the evidence that Appellant sought then and seeks now was irrelevant to the issues before the Bankruptcy Court.  In large part, that is because Appellant continues to confuse the standards for lifting the stay with the standards for foreclosing on the Three Properties.  (*See* Bankr. Dkt. #60 at 20-21).  As Judge Lane explained, once the stay was lifted, Appellant retained the ability to make his arguments in the Foreclosure Action.  (*See id.* ("If I grant it, then you'll proceed in that other court with whatever arguments and merit arguments on the merits that you're entitled to make.  And nothing that's happened here in connection with this motion changes that fact.")).  Appellant remains free to make them in that forum.

## CONCLUSION

In sum, a strong argument can be made that the entirety of this appeal is precluded by Appellant's appeal from the December 22 Order last year.  However, giving Appellant the strongest argument this record can support, he has a challenge to Judge Lane's evidentiary issues, which challenge (assuming a permissible basis for appeal exists) fails because Judge Lane properly exercised his discretion in taking evidence on the Lift-Stay Motion.  There is no basis to challenge the Bankruptcy Court's evidentiary rulings, and no basis to disturb the April 12 (or, for that matter, the December 22) Orders.

For the foregoing reasons, the April 12 Order is AFFIRMED, and Appellant's appeal from that order is DENIED.  The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:      March 3, 2017
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Everton Aloysius Sterling
c/o General Post 341
Bronx, NY 10469-9998